UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>ESTEVAN BAQUERA,<br>a/k/a OBAMA,<br><br>　　　　　　Defendant. | CR. 17-50049-04-JLV<br><br>ORDER |

**INTRODUCTION**

On November 29, 2021, the court sentenced defendant Estevan Baquera. (Docket 887). On December 13, 2021, the defendant appealed the sentence to the United States Court of Appeals for the Eighth Circuit. (Docket 893). While the appeal was pending, on January 31, 2022, the defendant filed a motion for reconsideration of the sentence. (Docket 903). On February 7, 2022, the Eighth Circuit issued an order holding the appeal in abeyance pending the district court's decision on defendant's motion for reconsideration. See United States v. Baquera, No. 21-3886 (8th Cir. Feb. 7, 2022). The government filed a response in opposition to defendant's motion. (Docket 916). For the reasons stated below, defendant's motion is denied.

**ANALYSIS**

On September 17, 2020, a grand jury returned a third superseding indictment charging Mr. Baquera and two co-defendants with count I,

premediated first degree murder in violation of 18 U.S.C. §§ 1111(a), 2, 1152 and 1153; count II, first degree felony murder in violation of 18 U.S.C. §§ 1111(a), 2, 1152 and 1153; count III, conspiracy to commit assault with a dangerous weapon in violation of 18 U.S.C. §§ 371, 1152 and 1153.  (Docket 487 at pp. 1-4. In count V, Mr. Baquera was charged with carrying and brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  Id. at p. 4. Mr. Baquera and the co-defendants were accused of shooting and killing Vincent Von Brewer III on October 16, 2016, in Pine Ridge, South Dakota.  Id. at pp. 1-2.

The parties filed a joint scheduling stipulation.  (Docket 538).  On February 25, 2021, consistent with the parties' stipulation, the court issued an order setting a jury trial date of September 14, 2021.  (Docket 539 at p. 2).

On July 8, 2021, defendant Estevan Baquera entered into a plea agreement with the government for his role in the murder of Mr. Brewer. (Docket 568).  In the plea agreement, Mr. Baquera waived indictment and agreed to plead guilty to a superseding information charging him with accessory after the fact to first degree murder in violation of 18 U.S.C. § 3.  Id. ¶ C.  The offense carries a maximum sentence of up to 15 years in prison, a $125,000 fine, or both and a 3-year period of supervised release.  Id.  The government agreed to recommend a 12-year sentence and Mr. Baquera agreed he would recommend a guideline sentence.  Id. ¶ F.  The recommendations of the parties were not binding on the court.  Id.  A factual basis statement supported the guilty plea. (Docket 569).

Defendant's change of plea was referred to United States Magistrate Judge Daneta Wollmann. (Docket 590). In accord with the plea agreement, the government filed a superseding information charging Mr. Baquera with the offense of accessory after the fact to first degree murder in violation of 18 U.S.C. § 3. (Docket 619). The magistrate judge conducted a change of plea hearing and filed a report recommending the court accept Mr. Baquera's guilty plea to the superseding information ("R&R"). (Dockets 624 & 627). On August 3, 2021, the court adopted the R&R, adjudged Mr. Baquera guilty of accessory after the fact to first degree murder and issued a sentencing scheduling order. (Docket 673).

Defendants Francisco Villanueva and Adan Corona proceeded to trial in September 2021. (Docket 836). Forty-six witnesses testified during the trial. Id. at pp. 4-9. Following the 10-day jury trial, Mr. Villanueva and Mr. Corona were found guilty of all the offenses in the third superseding indictment charging them with the murder of Mr. Brewer, as well as other associated crimes. (Dockets 836, 840 & 842).

In preparation for Mr. Baquera's sentencing, a presentence investigation report ("PSR") was prepared. (Docket 878). There were no objections to the PSR by either the government or Mr. Baquera. (Docket 879). The government filed an amended motion for upward departure to comply with the government's agreement to recommend Mr. Baquera be sentenced to a term of 12 years imprisonment. (Docket 882) (referencing Docket 568 ¶ F). Defense counsel

filed a sentencing memorandum together with eight exhibits. (Dockets 883 & 883-1 through 883-8). Mr. Baquera argued that a sentence within the sentencing guideline range of 78 to 97 months was supported by the factors set forth in 18 U.S.C. § 3553(a). (Docket 883 at p. 2). In advance of sentencing, the court also considered the defendant's seven support letters, three photographs of Mr. Baquera and his seven-page allocution statement. (Dockets 884 & 885).

On November 29, 2021, Mr. Baquera was sentenced. (Dockets 886 & 895). The court heard statements from Mr. Baquera, his family members, Mr. Brewer's family members and counsel. (Docket 886 at pp. 20:18-43:5). The court carefully examined the § 3553(a) factors and balanced their application in Mr. Baquera's case. Id. at pp. 43:6-54:19. The court announced its decision in open court. Id. at pp. 55:18-59:11. The court sentenced Mr. Baquera to a statutory maximum sentence of 180 months, granting him credit for 1,366 days time served. Id. at pp. 55:18-56:2; see also Docket 887 at p. 2.

The court varied upward from the guideline range of 78 months to 97 months for reasons clearly articulated on the record. The court thoroughly considered the government's motion for an upward variance, Mr. Baquera's role in the offense, dismissed and uncharged conduct related to Mr. Baquera's participation in the offense, the seriousness of the offense, the need to promote respect for the law and provide a just punishment for the offense of conviction, and avoiding unwarranted sentencing disparities when compared to a

4

co-defendant, Tiffany Garnier.[1] (Docket 887-1 at pp. 1 & 3). As additional facts justifying the sentence, the court summarized in the Statement of Reasons the oral pronouncement of the facts which warranted the sentence imposed.

> Dismissed and discharged conduct: A plea bargain resulted in the defendant pleading to Accessory After the Fact to First Degree Murder. The government agreed to dismiss First Degree Felony Murder charges though the defendant's role in the offense involved beating the victim to avoid his escape immediately before co-defendants shot the victim 15 times. Conviction on felony murder carried a mandatory life sentence. Based on the co-defendants' jury trial, it is highly likely Baquera could have been found guilty of felony murder. Baquera also held a firearm on crime scene spectators to protect the murderers and changed license plates on the defendants' vehicle to avoid detection. Baquera's co-defendant Tiffany Garnier received a 180 month sentence after pleading guilty to Accessory After the Fact to First Degree Murder. Baquera's upward variance avoided an unwarranted sentencing disparity.

Id. at p. 5.

On December 13, 2021, Mr. Baquera timely appealed the sentence imposed in his case to the United States Court of Appeals for the Eighth Circuit. (Docket 893). On January 31, 2022, Mr. Baquera filed a motion for reconsideration of the sentence. (Docket 903).

"[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of

---

[1] As a result of her role in the death of Mr. Brewer, the court sentenced Ms. Garnier to a term of imprisonment of 180 months on her plea of guilty to accessory after the fact to first degree murder in violation of 18 U.S.C. § 3. See United States v. Garnier, CR. 16-50137, Docket 80 (D.S.D. 2018). See also id., Docket 73 at p. 4. Mr. Baquera received the same 180-month sentence.

5

appeals and divests the district court of its control over those aspects of the case involved in the appeal."  United States v. Ledbetter, 882 F.2d 1345, 1347 (8th Cir. 1989) (citing Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982)).  "This rule applies with equal force to criminal cases."  Id. (referencing Berman v. United States, 302 U.S. 211, 214 (1937)).  See also United States v. Watson, 332 Fed. Appx. 341, 344 (8th Cir. 2009) (referencing Ledbetter, 882 F.2d at 1347) (filing of notice of appeal divests district court of jurisdiction over those aspects of case involved in appeal).  However, there is an exception permitting a motion for relief from a judgment under Rule 60(b).  See Fed. R. App. P. 4(a)(4)(A)(vi) (A district court is allowed to resolve a Rule 60 motion despite a notice of appeal so long as the motion "is filed no later than 28 days after the judgment is entered.").

    The Eighth Circuit granted Mr. Baquera's "unopposed motion to hold his appeal in abeyance pending the District Court's consideration of his motion for reconsideration and resentencing[.]"  United States v. Baquera, No. 21-3886 (8th Cir. Feb. 7, 2022).  Mr. Baquera's motion cited no procedural rule as the basis for reconsideration of his sentence.

    The court finds defendant's motion for reconsideration was not timely made as it was filed 63 days after the filing of the judgment.  Fed. R. Crim. P. 35(a).  For this reason alone, defendant's motion for reconsideration, Docket 903, is denied.

As additional grounds for denial of defendant's motion, the court will address its merits.

The essence of defendant's motion for reconsideration is his belief that "certain comments made by the Court at . . . sentencing . . . were not supported by the evidence at [the Villanueva and Corona] trial."  (Docket 903 at p. 1).  Mr. Baquera submits the court's application of 18 U.S.C. § 3553(a)(1) & (6) resulted in "a sentence that was 'greater than necessary' and, thus, violative of § 3553(a)." Id.

Mr. Baquera's argument focuses on the following:

1. H.C.'s trial testimony did not indicate Mr. Baquera pointed a firearm at the crowd.  (Docket 903 at pp.1-2);

2. H.C.'s trial testimony which contradicted Mr. Baquera's statement that the only purpose of the South Dakota trip was to collect a debt from Mr. Brewer was not credible.  Id. at pp. 2-4;

3. The court's suggestion that Mr. Baquera, because of his association with Robert Desersa, "deserved a harsher punishment[.]"  Id. at pp. 4-5; and

4. The court's understanding of defendant's "criminal conduct and criminal history . . . . [was] based on factually incorrect information."  Id. at p. 5.

Each of these arguments will be separately addressed.

1. H.C.'S TRIAL TESTIMONY DID NOT INDICATE MR. BAQUERA POINTED A FIREARM AT THE CROWD

Defendant asserts the court mistakenly found Mr. Baquera "point[ed] guns at the crowd to protect gang members . . . . [and] that [he] did this along with [H.C.], 'according to trial testimony.' "  Id. at p. 2 (referencing Docket 895 at

7

pp. 45-46). Mr. Baquera argues the only trial testimony was that H.C., acting alone, "pointed a gun at innocent bystanders[.]" Id.

The government's response "agrees the record does not support that [Mr. Baquera] pointed a gun at the crowd, but the record fully supports that he was armed with an AK-47 throughout the altercation." (Docket 916 at p. 6) (referencing Docket 824 at p. 61:11-19).[2] See also Docket 824 at p. 70:2-6) (H.C. testified Mr. Baquera had an AK-47).

While the defendant and the government both contend Mr. Baquera did not point his AK-47 at anyone, the government agrees that the factual basis statement acknowledged the defendant "assisted in keeping anyone from approaching during the assault and murder." Id. (referencing Docket 569 at pp. 1-2).

The defense did not object to any facts contained in the PSR. The uncontested portion of the PSR addressing offense conduct states:

> H.I.C., Francisco, Adan, and [Baquera] exited the vehicles. They were all armed with firearms. H.I.C., [Baquera], and Adan were wearing bandanas over their faces, but Francisco, Tiffanee, and Myles were not wearing one. Initially, the group pointed their firearms at a bystander; however, Tiffanee exited the vehicle and redirected the males to the victim. The victim asked them not to do it there and let the children go inside, which they did. . . . Francisco hit the victim with an AK47 firearm. He told H.I.C. to make sure no one in the area approached them, as there were multiple people

---

[2] Mr. Baquera was nicknamed "Obama." See Docket 824 at pp. 31:23-32:8 and 70:2-6.

>outside the Boys and Girls Club. H.I.C. pointed his gun at the perimeter to keep them back.

(Docket 878 ¶¶ 14-15) (emphasis added).

Among the 46 witnesses who testified at trial were Jordan Sky Brewer ("Sky"),[3] H.C. (who was a juvenile at the time of the offense) and Robert Desersa. (Docket 836 at pp. 4, 5 & 9). When the two vehicles came to a stop outside the Boys and Girls Club, Sky saw four people with firearms. (Docket 820 at p. 73:9-12). All four of the individuals were male. Id. at p. 80:11-15. They got out of the vehicles "brandished a firearm . . . . I have some rifles in my son and [my] face." Id. at p. 22:14-18 (emphasis added). Sky saw "SKS and AK-47s. . . . longer guns." Id. at p. 23:3-9. When asked "]w]ho did they point weapons at?" Sky responded "[m]e. . . . Just as soon as they got up to me. I already had it in my face when I started looking forward." Id. at p. 27:18-25 (emphasis added).

Sky told the jury one of the individuals had an SKS, two had AK-47s and a smaller skinny guy had a pistol. Id. at p. 74:10-19. It was clear to the court that H.C. was smaller than the three men. See Docket 824 at p. 33:13-18. H.C. was brandishing a pistol while the three men were brandishing the long guns, that is, an SKS and AR-47s. Mr. Baquera was one of those three men.

Sky was very clear in his testimony that the four men were, at least initially, pointing their firearms at him. The court finds the testimony of Jordan

---

[3]The court will identify Jordan Sky Brewer as "Sky" to avoid confusion with Vincent Brewer III, the victim in this case.

9

Sky Brewer credible. The testimony of Sky and H.C. was consistent with Mr. Baquera's factual basis statement: "Baquera was present for Brewer's murder. He assisted in keeping anyone from approaching during the assault and murder of Brewer." (Docket 569 at pp. 1-2).

When the group arrived at the Boys and Girls Club and saw Mr. Brewer, H.C. "was aiming [his gun] at the crowd," while Mr. Baquera "was holding [his weapon] up and pointing it at [Mr. Brewer]." (Docket 824 at pp. 72:8-9 & 72:24-73:4). The court finds the testimony of H.C. credible.

During the sentencing hearing, the court described Mr. Baquera's role in the assault on Mr. Brewer. "This isn't just a matter of holding a firearm on a crowd . . which you did. So did [H.C.] according to trial testimony. . . . [Y]ou basically provide protection for the people who are going to collect this drug debt, in ways that became very clear very soon as to how that was going to go." (Docket 895 at p. 45:5-13). "You can call it sideways. I call it first-degree murder. Held people back, terrified. . . . The group gets out of the cars heavily armed, points guns at [Mr. Brewer]. You point guns at the crowd to protect the gang members, as does [H.C.]." Id. at p. 45:14-25. The court did not overstate Mr. Baquera's role outside the Boys and Girls Club.

Defendant's first ground for reconsideration is denied.

2.  H.C.'S TRIAL TESTIMONY WHICH CONTRADICTED MR. BAQUERA'S STATEMENT THAT THE ONLY PURPOSE OF THE SOUTH DAKOTA TRIP WAS TO COLLECT A DEBT FROM MR. BREWER WAS NOT CREDIBLE

Mr. Baquera argues the court improperly accepted H.C.'s testimony as a basis to reject defendant's position that he thought the gang was only going to South Dakota to collect a drug debt. (Docket 903 at p. 3). Defendant submits there was no evidence he was aware the group was instructed by Mr. Villanueva or Ms. Garnier to "take care of them" if anyone got in the gang's way. Id. Mr. Baquera's claims he did not know Mr. Brewer was to be kidnapped. Id. Defendant argues the only witness who identified him "as the fourth perpetrator in assault and murder of" Mr. Brewer was H.C. Id. at p. 4. Mr. Baquera asserts there is insufficient evidence he "would have been found guilty of felony murder" had he gone to trial. Id. "Such a speculative conclusion" in defendant's view "would not only skew the Court's consideration of the circumstances of the offense more heavily against Baquera, but also apparently contributed to the Court's stated inability" to differentiate the conduct of Ms. Garnier and the conduct of Mr. Baquera. Id.

H.C.'s trial testimony made it clear that if Mr. Brewer did not pay Mr. Villanueva the debt owed to the Eastside Oldies, Mr. Brewer was to be killed. (Docket 824 at p. 35:4-5). In addition to the firearms Mr. Villanueva gathered for the journey to South Dakota, Mr. Baquera brought a Smith & Wesson 9mm pistol for the trip. Id. at 45:7-12. H.C. testified the plan to kidnap Mr. Brewer and kill him if he did not pay the debt was well known to the four of them as they

11

traveled from Colorado to South Dakota. Id. at p. 34:17-35:5. On their way to South Dakota, the group stopped somewhere in the country so Mr. Baquera and Mr. Villanueva could test fire the AK-47s to make certain they worked. Id. at p. 50:6-14.

H.C. testified the four of them wiped down the firearms and ammunition with their black bandanas while at Mr. Tuttle's house in Rapid City, South Dakota. Id. at p. 52:23-53:9. While enroute from Rapid City to Pine Ridge, Mr. Villanueva gave the 9mm pistol to Mr. Corona and gave Mr. Baquera an AK-47, as it was "an honor to carry the AK-47." Id. at pp. 60:24-61:19. Mr. Villanueva, Mr. Corona and Mr. Baquera rode together in the Honda. Id. at p. 60:19-20.

H.C. told the jury that once the confrontation began at the Boys and Girls Club, Mr. Brewer attempted to hide under a car. Id. at p. 74:10-13. Mr. Villanueva, Mr. Corona and Mr. Baquera pulled Mr. Brewer out from under the car, kicked him in the legs and Mr. Villanueva struck him in the head with an AK-47. Id. at pp. 74:19-75:14.

H.C. testified once Mr. Brewer was pulled from under the car, two of the three men who had been assaulting him put Mr. Brewer in the Honda. Id. at p. 79:9-16. H.C. saw Mr. Baquera running toward the other vehicle, a Buick, and getting in the door behind the driver's seat. Id. at p. 80:8-17. The next thing H.C. heard was Mr. Brewer being shot. Id. at p. 80:20-22. H.C. told the jury Mr. Villanueva and Mr. Corona were the shooters. Id. at p. 81:1-2. After

12

killing Mr. Brewer, the group drove the Buick into Nebraska where H.C. and Mr. Baquera changed the license plate.  Id. at p. 87:20-24.

H.C.'s trial testimony is consistent with Mr. Baquera's PSR.

> Francisco, Adan, and [Mr. Baquera] kicked and punched the [victim].  Thereafter, they forced the victim into the backseat of the Honda.  Someone yelled "We got em," and the group got into the vehicles.  The victim was able to get out of the car and eventually was on the ground, where Francisco and Adan shot him multiple times.

(Docket 878 ¶ 15).  Again, the court finds H.C.'s trial testimony credible and consistent with the unchallenged paragraph of the PSR.

Mr. Baquera argues the court improperly concluded a jury would have convicted him of felony murder.  (Docket 903 at p. 4).  This argument is without merit.  While Mr. Villanueva and Mr. Corona were the shooters and physically killed Mr. Brewer, in the court's view a jury would have convicted Mr. Baquera of felony murder had he gone to trial.  Felony murder occurs when an individual dies during the course of another felony, in this case kidnapping, 18 U.S.C. § 1202(a)(2).  See id. § 1111(a) ("Every murder . . . committed in the perpetration of or attempt to perpetrate . . . kidnapping . . . is murder in the first degree."  Felony murder carries a mandatory punishment of life imprisonment. Id. § 1111(b).

The court was entitled to use its four years of experience as an Assistant United States Attorney and Acting United States Attorney, twenty-one years as a private practice state and federal criminal defense attorney, six years as the

13

Federal Public Defender for the Districts of South Dakota and North Dakota and over twelve years as a federal district judge in concluding, as it did at sentencing:

> My own view is had you gone to trial[,] because you participated in the beating and held a gun on the crowd to protect the gang members who carried out this attack, you would have been convicted of felony murder, as were Corona and Villanueva. Your decision to accept this plea to accessory to first-degree murder very likely saved your life. Because as deep as you were in, based on the sworn testimony that I heard, you're guilty of felony murder. Mandatory life.

(Docket 895 at pp. 46:19-47:2).

Mr. Baquera argues the court mistakenly equated Ms. Garnier's conduct with his conduct in concluding a 15-year sentence was necessary to avoid an unwarranted sentencing disparity. (Docket 903 at p. 4). He contends the court was unable to distinguish her conduct from Mr. Baquera's conduct because of "the Court's stated inability to 'parse out [Mr. Baquera's] behavior and that of Tiffany Garnier[.]" Id.

Contrary to defendant's argument, the court had no difficulty identifying the differences between Ms. Garnier's conduct—being a driver of one of the vehicles and pointing out Mr. Brewer to the group—and the conduct of Mr. Baquera.

> I have to avoid an unwarranted sentencing disparity. I can't slice too finely the facts between you and Tiffanee Garnier. Tiffanee had a different role, that's true. But in terms of the behavior at the scene and the homicide of Vinny Brewer and the events that followed to avoid detection, there's not too much difference.

(Docket 895 at pp. 53:25-54:5). The court had

> to consider [Mr. Baquera's] role in the offense. I've made pretty clear my views about that . . . . And I'll say again in terms of

14

> balancing those factors, I believe that [the] jury would have found you guilty of felony murder for your participation in this homicide, with a mandatory life sentence.

Id. at p. 51:10-16. The court's analysis did not, as Mr. Baquera suggests, "improperly skew[] the . . . balancing of the § 3553(a) factors against Baquera such that a resentencing is necessitated." (Docket 903 at p. 4).

Defendant's second ground for reconsideration is denied.

3. THE COURT'S SUGGESTION THAT MR. BAQUERA, BECAUSE OF HIS ASSOCIATION WITH ROBERT DESERSA, DESERVED A HARSHER PUNISHMENT

Because the court made a comment during sentencing that Mr. Desersa "has decided to no longer kill women and children," and "[t]hat's the gang you're running with man[,]" Mr. Baquera claims his association with Mr. Desersa resulted in a harsher sentence. Id. at p. 5 (citing Docket 895 at p. 46:13-14 & 16-17).

Mr. Baquera accurately summarized Mr. Desersa's trial testimony. Mr. Desersa "testified that he had been solicited by Corona and Villanueva to kill certain Government witnesses and their families, including women and children, which is something Desersa had never done and was a line he would not cross." Id. at p. 5 n.7. The court's statement that "Mr. Desersa . . . has decided to no longer kill women and children" may have been an inaccurate summary of the trial testimony. Id. at p. 5. But the purpose of the court's statement was not.

Mr. Villanueva and Mr. Corona wanted to hire Mr. Desersa to kill a number of government witnesses, including their families, women and children.

15

The fact Mr. Baquera's co-defendants were willing to engage in this type of horrendous conduct reflects on "the gang" Mr. Baquera was running with. Mr. Baquera traveled with Villanueva and Corona to Pine Ridge Reservation two days after he completed his Colorado parole for attempted first degree murder. (Docket 895 at p. 46:16-17).

The court's sentencing comments were consistent with its view of the trial evidence and Mr. Baquera's gang-affiliated conduct. "You weren't a shooter, but you came about as close to that shooting as could possibly be done. You beat [Mr.] Brewer. You were on the ground when you heard the shots . . . . I have no reason to doubt that. And then you fled with the rest of them[.]" (Docket 895 at p. 48:19-23).

Defendant's third ground for reconsideration is denied.

4. THE COURT'S UNDERSTANDING OF DEFENDANT'S CRIMINAL CONDUCT AND CRIMINAL HISTORY WAS BASED ON FACTUALLY INCORRECT INFORMATION

Mr. Baquera submits the court mistakenly believed he had been convicted of killing another individual before the death of Mr. Brewer and that misconception caused the court to inappropriately impose a 15-year sentence. (Docket 903 at p. 5). Defendant argues the court blurred Mr. Villanueva's previous murder conviction with Mr. Baquera's attempted murder conviction and then imposed "a fifteen-year sentence . . . . based on factually incorrect information." Id.

16

The court did not improperly connect Mr. Villanueva's prior murder conviction with Mr. Baquera's participation in the death of Mr. Brewer.  The court acknowledged Mr. Baquera's prior offense was "for attempted murder."  Id. at p. 49:9-10.  "[H]ere we go again.  Another life is gone" was a comment on the reality Mr. Baquera's prior sentence for attempted murder did not deter him from joining in the plot which resulted in Vinny Brewer's death.

Defendant's fourth ground for reconsideration is denied.

## ORDER

Based on the above analysis, it is

ORDERED that defendant's motion for reconsideration and resentencing (Docket 903) is denied.

Dated April 28, 2022.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE